# IN THE COURT OF APPEALS OF IOWA

No. 20-1099
Filed November 30, 2020

**IN THE INTEREST OF W.N.,**
**Minor Child,**

**T.N., Father,**
     Appellant,

**D.B., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Jones County, Deborah Farmer Minot, District Associate Judge.

A mother and father each challenge termination of parental rights to their now one-year-old son. **AFFIRMED ON BOTH APPEALS.**

David R. Fiester, Cedar Rapids, for appellant father.

Zachary D. Crowdes, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Andrew R. Wiezorek of Jacobsen, Johnson, & Wiezorek, P.L.C., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

W.N.'s life started with adversity. Born two months premature, W.N. tested positive for methamphetamine. His mother, Dominique, had no prenatal care. His father, Timothy, did not have housing appropriate for a baby. The parents agreed the Iowa Department of Human Services (DHS) could place W.N. with his maternal grandmother. In the ten months since W.N.'s removal from their care, neither parent scheduled a substance-abuse evaluation; neither cooperated with drug testing; and neither found a residence where W.N. could live with them. Seeing their inaction, the juvenile court decided the State offered clear and convincing evidence supporting termination of parental rights. Both Dominique and Timothy appeal that decision. After our independent review of the record, we uphold the termination ruling.[1]

The DHS intervened at the hospital in September 2019 after newborn W.N.'s drug test came back positive. W.N.'s grandmother agreed to take care of him; Dominque also moved into her mother's home under a safety plan. But Dominique left without explanation after only one month. Since then, neither parent has been consistent in their interactions with W.N., showing up for less than one-third of the offered visitations. And neither parent attended W.D.'s medical appointments when he had health issues.

---

[1] We review these proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522–23 (Iowa 2020). We give weight to the juvenile court's factual findings, but we do not consider them binding. *Id.* As petitioner, the State must offer clear and convincing evidence of the grounds for termination. Iowa Code § 232.117(3) (2020).

In the case plan provided to the parents, the DHS expected them to undertake substance-abuse evaluations and submit to drug tests. The parents did not live up to those expectations. Even after receiving reminders over a six-month period, neither completed a single substance-abuse evaluation. And, despite service providers offering dozens of screening opportunities, the parents never participated in any drug testing. Because Timothy had several drug- and alcohol-related criminal charges over the past few years, the DHS worker suspected his refusal to submit to drug testing signaled ongoing drug use. That signal was even stronger for Dominique. The DHS learned in February 2020 that Dominique was again pregnant. A prenatal screening in April returned positive for methamphetamine.

On top of concerns over the parents' drug use, the DHS worried about their lack of stable housing. When the parents eventually moved into an apartment in February 2020, they did not notify the DHS of their new address. Timothy testified at the termination-of-parental-rights hearing in July that they were "just getting established in [their] new place, and it [was] under renovation." He added: "I wouldn't recommend a kid to be in the house with all the dust and stuff going on with me doing the work in the house at the time."[2]

The court terminated the parental rights of both Dominique and Timothy under Iowa Code section 232.116(1)(e) and (h). The court found termination to be in W.N.'s best interests because he would be "at high risk of drug exposure and lack of supervision" if returned to the parents' custody. *See* Iowa Code

---

[2] Dominique opted not to testify at the hearing.

§ 232.116(2).  The court also decided none of the countervailing factors in section 232.116(3) weighed against termination.  Both parents appeal.[3]

We may affirm the termination order on any ground supported by clear and convincing evidence.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  We focus on paragraph (h).  To terminate parental rights under that provision, the State must prove these four elements:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The parents challenge only the fourth element.

For her part, Dominique contends her living arrangement is now stable.  Yet the DHS had not been inside her residence.  And Timothy admitted the apartment was not ready for W.N. to live there.  Then beyond the physical set-up, safe parenting remains a huge question mark.

Dominique deflects the DHS concerns about drug use.  She asserts on appeal that "substance abuse is not a genuine issue for her.  While it is true that Dominique had not participated in drug testing or substance abuse treatment, there were no reported concerns of behavioral indicators of drug use in the months leading up to the trial."  This assertion contradicts the juvenile court's findings that

---

[3] Both parents raise the same issues in their petitions on appeal.  We will address them together, making note of differences specific to either Timothy or Dominique.

both parents have been under the influence at least once during a scheduled visitation with W.N. It also discounts the worker's testimony that Dominique tested positive for methamphetamine during a prenatal screening in April 2020. Like the juvenile court, we find clear and convincing proof that W.N. could not be safely placed back in Dominique's care. *See D.W.*, 791 N.W.2d at 707 ("The record does not provide any evidence that D.W. could safely be returned home with A.W. at the time of the termination hearing.").

For his part, Timothy acknowledges facing personal challenges during this child-welfare case, including "periods of unemployment, homelessness, and [being] sometimes left unable to communicate with providers due to his phone service being cut off several times."[4] He also blames W.N.'s grandmother for his spotty visitation record. Timothy contends she did not welcome him into her home and would not supervise his visits with W.N. He also points to his "unpredictable work schedule" and in-person visitation restrictions from "the COVID-19 crisis" as impediments to reunification with W.N.

Like the juvenile court, we reject the parents' "unconvincing excuses" for not making progress toward reunification with W.N. As the court noted: "They were resistant to services from the beginning, and utterly failed to follow through with any aspects of the case plan. They did not visit [W.N.] regularly or make any

---

[4] Timothy's attorney also contends "the record does not indicate any instance where the department provided any services to Timothy to alleviate these concerns." If that sentence is meant to challenge the reasonable-efforts aspect of the State's ultimate proof, we find the argument waived because the passing reference is insufficient to invoke our review. *See In re O.B.*, No.18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

progress before, during or after the pandemic prevented face-to-face contacts with providers and children." Granted, the public health emergency changed the available method of interacting with W.N. to video conference. But it did not push the trajectory of this case toward termination. *See In re W.L.*, No. 20-0880, 2020 WL 5229199, at *2 (Iowa Ct. App. Sept. 2, 2020) ("[C]urtailment of visits due to the pandemic had little, if anything, to do with the decision to terminate" parental rights). Instead, the State proved the elements of section 232.116(1)(h) by clear and convincing evidence.

Apart from the statutory ground, the parents argue the juvenile court should have denied the termination petition based on Iowa Code section 232.116(2) and (3). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (clarifying that once the State proves a basis for termination under section 232.116(1), the court must apply the factors in sections 232.116(2) and (3)). The parents argue termination worked to W.N.'s detriment because he had a loving bond with them. *See* Iowa Code § 232.116(3)(c). They also stress termination was unnecessary because W.N. resided with a relative. *See id.* § 232.116(3)(a).

We decide best interests within section 232.116(2)'s framework. We focus on W.N.'s safety, as well as the best placement for furthering his "long-term nurturing and growth" and his "physical, mental, and emotional condition and needs." *See P.L.*, 778 N.W.2d at 40 (rejecting use of unstructured best-interests test). We also consider W.N's integration into his placement and whether those caregivers are willing to adopt him. *See* Iowa Code § 232.116(2)(b). The record shows Dominique and Timothy love W.N., but they have not put in the effort to become safe and reliable parents. By contrast, W.N.'s grandmother has taken

excellent care of the child in his first year, has forged a strong bond with him, and is willing to adopt him. Moving toward that stability is in W.N.'s best interests.

Finally, the factors in section 232.116(3) do not stand in the way of termination. Under paragraph (c), the record does not reveal that either parent had such a close relationship with W.N. that he would be harmed by the termination. *See D.W.*, 791 N.W.2d at 709. In fact, the service providers' reports suggest that W.N. did not always recognize his parents. Likewise, paragraph (a) does not apply because the court did not bestow "legal custody" of W.N. on his grandmother. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

We affirm the termination of both parents' legal relationships with W.N.

**AFFIRMED ON BOTH APPEALS.**